Page 17, 2394, Santiville Country Club v. Commissioner of Internal Revenue, argument not to exceed 15 minutes per side. Mr. Lennox, you may proceed when you're ready. May it please the Court, my name is Bryce Lennox. I am here on behalf of Lasantville Country Club. As this Court knows, this is a tax case and it involves a social club, which has a special place in the tax code. And the issue here, Your Honors, is whether a taxpayer must demonstrate profit motive to offset nonmember sales losses against its investment income. As you know, with social clubs, there's – a country club's got member activities and nonmember activities. The member activities are generally not taxable. The tax code carves that out for them. Nonmember activities, somebody throws a wedding at the country club or any social club, those are taxable under the code. And under the code as well, investment income is specifically taxable. Now, there are circumstances, and this is what this case is about, whether a social club can offset its investment income from interest or whatever with its nonmember losses. So if they incur losses from these nonmember activities, whether those can offset investment income. And that's the core to this case. And there's two things I don't think anybody disputes in this case, either I or the Commissioner. And that is – I take it that when we call it investment income, all the club profitability from member events is put in an investment account.  Okay, why – That's for operating. So if you have club events and, you know – The operating goes where? Operating goes in operating. You know, you get revenues from a – The club – the effort was to deduct from investment income. Say that again. I'm sorry. You missed me. As I understand the case, the investment income is where the deductions were improperly taken. Correct, from nonmembers. So there's an investment account. Correct. That's all I asked. Okay, I'm sorry. I misunderstood. There's not a club profitability account. It's an investment account. Correct. Got it. Correct. So there's two things I think everybody agrees upon. And these are really the holding of the Portland Golf Club case, which we've obviously briefed ad nauseum here. And there's two things. And the holding from Portland was that any losses incurred as a result of a petitioner's nonmember sales may be offset against its investment income only if the nonmember sales were undertaken with an intent to profit. So you have to try to – you have to have a profit motive with respect to your nonmember sales for weddings, everything else. I don't think anybody disagrees with that. The other – second part of the holding of Portland was that in determining your profit motive, if you were making – you're intending to make a profit, the entity must employ the same method of allocating its fixed expenses as it uses in calculating its actual loss. All that is saying, Your Honors, you have to use the same accounting method. So for whatever your – whenever you're determining your tax liability and whatever you're using for your profit motive, you've got to just – you've got to compare apples to apples. That's all that says. in your club because it consistently, for 13 years, lost money sufficiently to take deductions from investment income, 13 consistent years. So the argument is, of course, that it was not intending to profit. It was racking up losses. Well, that is certainly the position that the commissioner took. That's the one you need to address. That's exactly right, Your Honor. Okay. And our position is that Portland Golf Club doesn't address – it basically says just what we talked about. But what Portland doesn't address is how – the methodology to determine an intention to profit. It's our position that you looked at – you can look at multiple factors with respect to if a business intends to make a profit. You don't just look at the losses. There's other factors. Just a background question. Even if you looked at those nine factors, that wouldn't necessarily mean you win, right? You're just saying there's a broader universe of things you have to consider. It's not just gross to gross and gross to gross. You've got to consider all of these factors. And so go ahead and explain why you think the regulatory – the nine regulatory factors apply. But I want to understand, we would be in agreement that even if they apply, you still have to work your way through them and show that you qualify, right? I agree with that, Your Honor. Okay, that's fair. The problem is that the tax court just chopped it off the knees, and they didn't even get there. What factors do you think are applicable? Are they the so-called hobby loss? Yeah, among other things. If you look at – I mean – Thirteen factors? Well, yeah, I think there's nine, actually, roughly. But, I mean, if you look at Portland Gulf, the footnote 22 in Portland Gulf seems to open the door to look at other factors. I think that's pretty clear. And I also think that obviously Justice Kennedy's concurring opinion seems to open the door. It seems like everybody says, hey, we can look at this stuff if we want to. But the court just never got there. And that – arguably that's because the appellant in that case never bothered to make the arguments that we're making, and we're making them for the first time. Go ahead. How are you ever going to make a profit, though? You're going to have to jack up the nonmember fees, right, to bring in more income from weddings or bar mitzvahs or whatever it is. And under the gross-to-gross, you're going to have to allocate more of the expenses, right, proportionally, because the nonmember income gross sales is going to be higher. So I don't see how using this method you're ever going to turn a profit. And so the evidence that you've never had a profit seems to me takes care of it. How are you intending to make money here? Do you have a consultant that has said there's a breakeven point where we need to charge this much for nonmember weddings, and then at some point we're going to have enough money in the kitty that we can make a profit? Well, Your Honor, I can't predict how they're going to make a profit. Certainly that's for them to decide. But as to going back to the factors, and this goes – what are you doing to try to make a profit? They've got a board. They've got managers. They've got an entire professional staff that's working to try to – For 13 years they've worked on trying to make a profit, and they're not getting there. And another aspect of that question is what efforts were made to show in the record, efforts to get out of that same hole. There doesn't seem to be changes in the business model. There's no evidence put forth to the tax court to support the idea that there was an intent to profit, and it's shown by we did this, we changed that, we reduced the indirect expenses that we wanted to allocate to offset and thereby avoid paying tax. I don't disagree that there was no evidence of that in the stipulated record, Your Honor. But what I think – the issue here is this all comes back to the land. We're all circling back to the appreciation in the land. This is a very unique situation because we had two clubs. We had Lissanaville Country Club and we had Crest Hills Club that actually merged in I believe it was 2002. So both thought there would be synergies among this. What they did is they operated jointly. Both clubs ran concurrently for about a year, and they shut down Crest Hills, and everybody basically moved over to Lissanaville. They renamed it. They called it the Ridge Club for several years, and then they sold the property. And so they made – the appreciation on that property alone, just the Crest Hills property, was almost $2.5 million by the time they put a contract on it. And after it was sold to the city of Madeira, it was four years of tied-up litigation. It had appreciated substantially. Why does the appreciation of the property lend itself to prove a profit motive? That is – well, that's a great question, Your Honor. But that's one of the things under the treasury regs and among case law that people – you look. If you're looking to see if there's a profit motive, you can look to see if there's plenty – a lot of the cases involve farming. You have a farmer that's losing money. Farmers lose money, losing money, losing money, losing money. He's got a piece of property that's still – that is being farmed. And that coupled – the farming may be losing, but he's making – he's appreciating on the property. Case law, and I've cited several in my brief, says that, hey, he's still got a profit motive. Kind of horse racing is a similar industry. This is no different. There's no question that members – the non-member sales, the non-member activities, and the member activities were all being – the facilities were being used for all that. The tennis courts, the clubhouse for weddings, the golf course for all those things. They were using these properties for purposes of development and generating non-member sales. So there is a nexus between the appreciation of the property and the activities that were going on there. This is – I'm sorry, Your Honor. If you're doing a totality of the circumstances, is that factor alone enough? I'm struggling. I can understand the CFR9 factors. I can understand that it's a broader analysis. I guess what I'm struggling with is there are seven factors that you really don't address of the nine. And I'm also struggling because any organization would need general accounting managers and people who kept up and tracked funding. So that doesn't really speak to me as a profit motive. That speaks to me as a this is how you run the business motive. So if that's your argument, wouldn't anyone who has an appreciating piece of property then be able to always deduct their expenses because they are in the fortuitous circumstance of having appreciating property? I don't think that's always the case, Your Honor. I think that's – once again, I think this is one of the many factors. And you asked about we address one of the factors. There's a few of the factors. Let's put it that way. I think seven of them are – Yeah, there are seven. But if you look at – you actually look at the regs. It says, listen, you've got to look at all the circumstances. Not one factor is determinative. And that's the problem we have here. The tax court made one factor determinative. That's it. And it had to do with the bottom line for 13 years. Let's assume that's wrong. What should have been done? What should have been done is the tax court should have looked at all of what we submitted, the appreciation. It should have looked at some of the other evidence. Some of the other evidence is – But I mean in the law, what is appropriate? What cases support what sections? It's the Section 183 factors, right? Yeah, and I mean case law – I mean basically the Treasury regs are based upon longstanding case law. This is – the concept of profit motive is nothing new in tax. It's gone back for 50 years probably. So that was just – really the regs were a codification of longstanding case law. So this concept has run long and deep for many years throughout tax jurisprudence. It's not amorphous factors. They have to come from the regs. I think that's – yeah, I mean they look – it says look at all factors. I mean that's certainly – if you look at the regs, it says, hey, look at these factors. But you can look at stuff – you can look at other facts too, not just those. What are your best other factors besides land appreciation? And if you can quickly do it, suggest to us where in the record they are located. Sure. Let me get to my factors if you wouldn't mind. You didn't grace us with those – response to those in your brief. I think I addressed – what's that? As Judge Dranch mentioned, you mentioned only two. Okay. The expertise of the taxpayer as advisors. As we noted, we have an entire board of directors. We have entire tax folks that are associated with that. The time and effort expended by the taxpayer in carrying on the activity. I think that's what they do. This isn't a side deal where they're trying to – that's the core business, if you will.  I'm sorry, Your Honor. These are factors that you were going to address. The factors that you've failed to address in your brief, I take it. I think that's fair. That will be done on rebuttal if you've saved any time. Have you? I have. Two minutes, Your Honor. All right. Please do. Thank you. May it please the Court. Paul O'Loulis appearing on behalf of the Commissioner of Internal Revenue. Your Honor, counsel conceded, as he must, that Portland Golf provides that when evaluating profit motive for purposes of unrelated business income tax application, the taxpayer is required to use the same accounting method in calculating its profit motive or in showing its profit motive as it uses when reporting its taxable income. And in this case, the taxpayer is attempting to do the opposite of that. In this case, the taxpayer generated its report of taxable income, allocating its fixed expenses on a gross-to-gross basis, and that was what it took into account for reporting its taxable income. Now, for purposes of arguing about its profit motive, it wishes to add into the mix other factors rather than simply its fixed and indirect costs, and it wishes to back out again those indirect costs. And that's the only way at which it's able to arrive at its argument for profit motive here. And the Supreme Court in Portland Golf foreclosed exactly that type of argument. But did it? And you would call that your strongest, the failure to consistently book expenses? Yes, Your Honor, absolutely. The failure to apply the same methodology in determining taxable income as in arguing for profit motive. The court was very clear in Portland Golf that the same methodologies must be used, and here they're not doing that. Is that the grounding for your argument that, and maybe you think Portland Golf forecloses it too, that a taxpayer cannot or a court should not look at the 183 factors at all? No, Your Honor, the 183 factors are not applicable in this context. The statute itself, Section 183 of the Internal Revenue Code, states on its face by its plain terms that it applies to individuals and S corporations. The regulations under Section 512 state very clearly that no inferences to be drawn as to whether the activities of a corporation qualify as a trade or business based upon the Section 183 factors. It is true that the Supreme Court left open in footnote 22 the possibility that a taxpayer could, under some circumstances, show an intent to profit, notwithstanding that it showed a loss in the particular tax years at issue. And that's the distinction I think that is important here. Tax years stand on their own, and simply because a particular taxpayer generates a loss in any particular tax year does not necessarily answer the question whether it was seeking to profit from its activities in that tax year. Even General Motors- For the 13-year span is what did get your attention here. Exactly, Your Honor, and not only did it get the attention of the commissioner here, but it got the attention of the Supreme Court in the Portland Golf case. In that footnote, the Supreme Court goes on to say, it's understandable why the taxpayer in this case did not seek to make any other argument about its profitability in light of the nine years of losses that it experienced in that case. The Supreme Court essentially said, under those circumstances, in this context, it is impossible to show an intent to profit. Here we have 14 years of losses, the entire- So what do you make of the fact that courts routinely use the 183 factors? They do not routinely use the Section 183 factors in the UBIT context, Your Honor. They use them in the context of differentiating the activities of an individual from a hobby or a business. And that's why we make the point in our- Individual with a hobby as opposed to a business. You say the feature of a business entity attempting to use it is the distinguishing feature in the courts- I mean, in the precedent that we know. Correct, Your Honor. Yes, that is correct. But the court cited the reg in that footnote, right? Correct. The Supreme Court cited 183 in the footnote. I mean, isn't that an indication to us that they thought it was relevant? Not necessarily, Your Honor. I agree they cited- Possibly? Not necessarily doesn't foreclose it, right? Possibly. In an earlier footnote in the same opinion, the court made the point that Section 183 does not apply in the situation presented in Portland Golf. So I think at least there's an ambiguity there. I believe, Your Honor, that the court was citing those regulations as an example to support the preceding sentence that it was saying. That, you know, a taxpayer doesn't always necessarily fail to demonstrate an intent to profit as a result of a loss in a particular year. As an example, it cited those factors that are listed in the Treasury regulation. But the court, again, in an earlier footnote, made clear that Section 183 does not apply to a corporate taxpayer in the situation. If what the tax court says is, I'm going to count off the number of years you didn't make any profit, and that's it. Once you've missed five years or seven years or whatever the number they choose, then there's no reason to look at a broader spectrum. And I think it's pretty clear that Portland is looking at a broader spectrum. I mean, take, for example, a business that is not profitable, and it's not been profitable for three years. And they go out and they hire a business specialist, and they bring that person in. And that person says, do this, and they try that, and they're not profitable for two more years. Then they hire somebody different. They bring them in. They say, do this. They do that. And then three more years. You know, they could have had seven, eight, nine, whatever years of non-profitability, and yet would have met all of the other factors and would have been making the effort, would have been showing what is at issue, not are you profitable or not, but do you have an intent to make a profit. So in that circumstance, don't you have to look at factors beyond whether you succeeded in that over the course of a number of years? Perhaps, Your Honor, such an argument could be made. And I agree with the court that that is a possibility that the Supreme Court left open in its footnote 22 in the Portland Gulf case. And what would you say it allows? What factors could, if not the 183 factors, that's your stance, what factors could be used a la Judge Strange's question? Well, Your Honor, I'm not certain what specific factors the court may or may not have had in mind in that case. Any court may. Okay. Or you think just Portland? Yes, Your Honor. And this specific circumstance. I don't think that the court needs to write for any broader case than the one that's currently before it. And in this case, there are no other factors present, as the court pointed out in this prior question. But the problem for me is the standard for which you argue is that they were unprofitable for this length of time. You can't look at anything else. Either you do gross to gross and gross to gross or you lose. And I'm struggling. In order to accept that you win under your argument, your argument has a very narrow group of factors that are considered. Just because we chose to employ 183 factors doesn't mean that you lose. Correct, Your Honor. This gives you the opportunity to review factors that are perhaps applicable. Whether a farmer has a hobby or a business looks to some of the same factors as to whether your purported business is really just a hobby or a help to nonmembers. It seems to me that we have this crisscross here of practical reality. What are the factors you look to? And here are a list of nine that have some viability. I think the footnote would even suggest that there is a broader expanse of those. Because the question is a practical one. What are you doing? How can you show me your intention? Not your success, but your intention. So why wouldn't we look, why wouldn't we say that it's generally a totality of the circumstances test? I think that, Your Honor, would be perfectly proper in applying a totality of the circumstances approach here. In this case, under the totality of the circumstances, there is no evidence in the record to support a profit motive. And in this unrelated business income context, the cases that we cite in our brief make clear that courts have relied very heavily on the history of profits or losses as indicating what the entity intended. And I think it's very important to distinguish in this case partly why the Section 183 factors don't always make sense in this type of a context. The Section 183 factors are designed to differentiate between an activity that an individual human being engages in for pleasure, for fun, for recreation, for whatever personal drives may be there, versus the drive to turn a profit. And so many of those factors are designed to tease out the difference between those two things. And so, for example, some of the facts that the country club references here, the fact that they had a business structure, the fact that they had trained employees who reviewed financial statements, who did these things and made business-type decisions. It's not so informative when there's already a business structure in place that is running the membership activities. It would be very surprising if they weren't using their already existing infrastructure to also engage in this activity of their non-member sales. But then they look like a business, right? I mean, why wouldn't that cut in their favor? Because it's present in any situation, as Judge Strang said earlier, where you would have a sophisticated entity. But doesn't that suggest that they are then taking in revenue and have expenses and they look kind of like a business and they look like they have a profit motive? Having this infrastructure in place as opposed to the guy that has a hobby or whatever? No, Your Honor, I don't think it does. In the case of an individual person, typically someone that is not seeking a profit doesn't go through the trouble of building a business infrastructure in order to simply run a recreational activity. Someone that does go through all the trouble of creating financial statements, creating business plans, doing all of these things, in the case of an individual human being, probably that does tend to indicate that maybe they're doing something other than just having fun. But when you have an already existing tax-exempt entity that has all of those things in place, the fact that those things are already in place doesn't really inform the difference between those motivations here. And we should understand, I think, your overarching point is that those 183 factors are meant to examine the individual who's claiming a lot of deductions for hobby losses when the IRS is saying, you're really a business, okay? You do need to pay tax. Well, typically in those cases, Your Honor, what's happening is the disallowance of those deductions. Taxpayers, and counsel is correct, these cases frequently come up in the farming context, in horse breeding context, things like this, which are very expensive, pleasurable activities for which taxpayers often seek to deduct the expenses by claiming, oh, this is a business and therefore that's why I'm allowed to go ahead and deduct these losses. And then those factors come into play to differentiate between the fact of that horse breeding activity, as an example, as simply a very expensive hobby or as a business designed to generate income. For which you pay tax. It just seems to me that what we have is this practical continuum. You may be a business, and the business surely keeps books, but does the business have a business plan? And is the business plan informed by expertise that would tell you how to increase your profitability? All of those on the continuum matter to whether you, once again, not whether you actually made the profit, but whether you intended to make the profit. If losses are all that matters, then you're looking at this one narrow factor of the group, that's kind of the sixth factor, raising it above all the others. So I guess I'm struggling. Maybe the point blank thing would be to say, don't you think this is a totality test, and don't you think it could be informed by the 183 factors, even if there's no mandatory requirement or even expectation that they should be applied in every case? I think they could be, Your Honor, but in this case, none of those factors actually point towards a profit motive. Yeah, that's a different question. Correct. You're saying yes on the factors. They're relevant. I think that they could be informative under the right circumstances. And again, in the Portland Golf case, in footnote 22, the Supreme Court itself focused on the history of losses and said, given this history of losses, trying to make out the case on other factors isn't going to get you there. And that's the same thing here. Before you finish, I have a question on the accuracy penalty. Yes, Your Honor. Okay. I wonder if you can explain, there's a discrepancy in the briefing, the two numbers, the 941 in some places and 951 in your deficiency notice. And it seems puny, but the whole case is puny. It's only $5,000. So what's the deal on that discrepancy? Your Honor, that's the first that that issue has been raised with me, so I don't know the answer, whether perhaps it's simply a typographical error. 212, this is your penalty. In 2012, it's 941 and 951 in your deficiency notice. It seems like a small point, but perhaps you could answer that in a letter. Yes, Your Honor. Thank you. Thank you. Were you able to finish? I'm sorry, I interrupted the last of your last. I was simply wishing to address the lack of connection between the holding of the land versus profitability, and I think intent to profit. On that point, Your Honor, I think in a very important point here, even assuming that the Country Club could demonstrate that there was this level of economic connection between the holding of the land and the nonmember sales activity. In this case, the nonmember sales activity on the Crest Hills property, which is the property that the Country Club sold for a profit, ceased. There was no nonmember sales activity whatsoever on that property after October of 2003. And here we're talking about tax years 2010, 11, and 12. So the notion that somehow there was a connection between the nonmember sales activity and the sale of the property for a profit when they weren't even conducting nonmember sales on that property for a number of years just makes no sense. All right, thank you. Thank you, Your Honor. Thank you. In fairness, it was good that we were able to get that out from counsel so that you had the benefit of responding to it. I wanted to comment on, Your Honor, and Judge Strantz, to your point. You asked if there was a panoply of factors here, and his exact words that they could be informative. The problem here, Your Honor, is the tax court never even bothered to get to that point. They cut it off at the knees. They literally looked at 13 years of philosophy and said, we're done. I'm not going to look at the 183 factors at all because they're not relevant. They looked at the gross to gross and not gross to gross. Exactly. That is another pretty significant factor. All the evidence is in there. All the evidence is nevertheless in the record. It is in the record, but they never even got to that. Right, right. So to your point, Judge Cook, you asked me about the factors, and what are some of the factors that, you know? That you didn't address in your brief. Right, well. Well, yes or no. We addressed some of them. For example, those. I know that, but there's quite a few, as Judge Stranz got you to admit, that you didn't speak about in the least. Well, why? You want to do it now, but the brief was the place we would have looked for that. Well, I think we highlighted the most important ones and the biggest ones. The others didn't matter. I wouldn't say they didn't matter. Now you're going to tell us they do. Go ahead. Well, I'm not going to. Some of them, admittedly, Your Honor, may not be completely applicable. For example, number nine, the elements of personal pleasure and recreation. That doesn't really apply to a country club or to nonmember sales activities in that sense. So some of them, you know, once again, this is a, to Judge Stranz's point, this is a, you don't just look at these nine. You look at it in total. So some of these may not be applicable, and we would agree with that. I don't, I'm still struggling with what is the, we've talked about these factors. That's fine. But where's the practical evidence that the club ever really wanted to make a quote-unquote profit on the nonmember activities using this accounting method? You'd have to, you'd call in a consultant. I don't know. You'd have somebody, this is 13 years of losses. If this were a real business, it wouldn't exist anymore. So, you know, it just looks to me like somebody decided, hey, you know, we don't want to raise our member dues. So the club's vacant on a Saturday night. Let's just have nonmembers come in and do weddings or whatever. And you charge them a fee. As long as they cover their costs, whatever's left over can go to offset the costs of maintaining the golf course or whatever. But it's never going to be a profit. I mean, it's just, it's a benefit to the club because they can, they don't have to jack the dues up. But I don't see how, as a practical matter, it's a profit when we talk about gross-to-gross and allocation. I'm out of time, Your Honor. May I answer that? You may. You know, once again, Your Honor, I would argue you have to look at the factors. The fact that they may not, you know, get there I don't think is determinative. Like I said, we have $2.5 million in appreciation that's from a land sale that certainly, you know, they intended, when they bought the land, they intended for member services. But, you know, I'm sure there was a secondary thought that, hey, if we can make some money on this in the long run, because we're going to own it forever. Well, the take from the IRS is that you're avoiding paying taxes on that income. Because there was, if compared gross, comparing gross-to-gross, you made money. The club made money every year. But then they took all these deductions and managed to come up with, voila, losses again. Right? That's how it ended up. There was gross-to-gross profit. Well, no, there was gross-to-gross. Income exceeded expenses, direct expenses. For non-member services? Right. That's what I understood. No, I don't think, I think if you look at the direct costs, if you took the non-member. That's what I'm talking about. Okay, that non-member revenue, and then you took out the direct costs, there was a profit. But then when you take the gross-to-gross method and you apply the indirect, you're right, there was a loss there, Your Honor. There was a profit before the indirect was deducted. Correct. And the deductions are what we're cranky about. Correct. The IRS. All right. Thank you, Your Honor. Thank you. All right, we have your matter.